The Court will grant defendant's motion for summary judgment. The matter shall be submitted to arbitration.

**UNITED STATES of America, Plaintiff,**

v.

**Gilbert DOWDY, et al., Defendants.**

**No. 90–00026–01–CR–W–8.**

United States District Court,
W.D. Missouri, W.D.

May 13, 1991.

See also 738 F.Supp. 1283.

Linda L. Parker, Kenneth E. Weinfurt, Asst. U.S. Attys., Kansas City, Mo., for plaintiff.

Carol Coe, Kansas City, Mo., for defendant Gilbert L. Dowdy.

Sylvester James, Jr., Blackwell Sanders Matheny Weary & Lombardi, Kansas City, Mo., for defendant Samuel Dowdy.

Lawrence Pelofsky, Kansas City, Kan., for defendant Steven Baker.

Robert G. Duncan, Kansas City, Mo., for defendant Robert Turner.

## ORDER OF CONTEMPT

STEVENS, District Judge.

In an indictment handed down on February 20, 1990, Gilbert L. Dowdy and ten others were charged variously in twenty-seven counts with offenses related to the operation of a multi-faceted, long-term conspiracy to distribute drugs in Kansas City, Missouri. In Count One of the indictment the government also sought an order of forfeiture of certain parcels of real estate allegedly acquired with the profits and proceeds of the drug conspiracy alleged in that count.

During the months after the indictment but before the commencement of trial, seven of the original eleven defendants entered into plea agreements, the approval of which resulted in there being four defendants tried who were charged in some or all of twenty-one counts of the indictment. They were Gilbert Dowdy, Samuel Dowdy, Steven Baker and Robert Turner.

After various pretrial proceedings and an abortive effort to select a jury on August 23 and 28, the jury was impaneled on September 7 and the trial got underway on that date. It was concluded with the return of verdicts on November 13, 1990 after thirty-eight days of trial and five days (a total of 28 hours) of jury deliberation. During the trial the court dismissed Count Fifteen upon defendant Gilbert Dowdy's motion at the close of the government's case.

The jury found Gilbert Dowdy guilty of four counts and not guilty of the other sixteen charges against him which were submitted and found Steven Baker and Robert Turner guilty as charged. Samuel Dowdy was acquitted.

Early in the trial of this complex case, it became obvious to the court that Carol Coe (hereafter Coe), lawyer for defendant Gilbert Dowdy (hereafter Dowdy), had no intention of permitting the trial to proceed in an orderly manner consistent with the Rules of Criminal Procedure, the Rules of Evidence and the Local Rules of the United States District Court for the Western District of Missouri. Quite to the contrary, even early in pretrial proceedings Coe demonstrated her determination to be as obstreperous and obstructive of the administration of justice as she could continue to be. Then throughout the trial on a daily basis it was clear to the court that Coe had the firmly formed intent to obstruct and impede rather than further the search for truth and that she was committed to a course of action that went far beyond any called for in the performance of an advocate's effective representation of his or her client.

This was the case so repeatedly and to such a clear extent that the court found it necessary on four different occasions during the trial summarily to find Coe in contempt pursuant to 18 U.S.C. § 401 and Rule 42 of the Federal Rules of Criminal Procedure in order to be able to proceed at all. On each of the first three of such occasions the court fined Coe $100. On the fourth occasion it was necessary to have her taken into custody in order to bring her under control and make it possible for the proceedings to go forward.

The orders finding Coe in contempt and fining or confining her were entered out of the hearing of the jury during a bench conference on each occasion and after clear warning to Coe that further disruptive and obstreperous conduct by her would not be tolerated. Those summary contempt orders were entered on September 28, 1990,

the nineteenth trial day, on October 10, 1990, the twenty-fifth trial day, and on October 17, 1990, the thirtieth trial day.

Thereafter, on October 31, 1990, the thirty-ninth trial day, after the court called a recess and the jury withdrew, it became necessary to order Coe into the custody of the U.S. Marshal and into confinement. After her apology was conveyed to the court by her lawyer she was released, the contempt order was vacated and the proceedings resumed.

This memorandum constitutes the certification required by Rule 42(a) that the court saw and heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The required recitals of the facts are in addition to the commentary which follows.

 The physical circumstances of the first incident on September 28, 1990 take some explanation in order to understand what it was Coe did that was contemptuous. In the courtroom in which this case was tried the bench is in the center of the south wall of the room with the judge seated so he is facing north. Immediately to the court's left (west) and elevated to the same level as the bench is the witness stand. An aisle about three feet wide to the west separates the witness stand from the jury box which extends along the west wall and to the north with two rows of seats. The court reporter sits in front of the stand and the podium for counsel's use while movable is, when used to examine witnesses, usually just beyond or to the north of the reporter. When counsel finds it necessary to approach the witness, he or she proceeds from the podium along the aisle in front of the jury box to the side of the witness box. It was in this setting that the scenario developed on September 28, 1990.

The witness was Vicky Nixon, a defendant who had pled guilty and who testified to an intimate relationship with Dowdy. Coe conducted tedious, aimless cross-examination of this witness and had gone

through an exhausting line of questions about who did or did not have a beeper and whom the witness had or had not beeped, and to whom the witness had or had not sold drugs. It was clear that this cross-examination was undirected and pointless, was well beyond the scope of direct and had no bearing on the impeachment of any substantive evidence or of any witnesses and it had equally little to do with any fact Coe needed to prove to assist her client's defense. It was just plain harassment. However, in the absence of objection from the government, the court did not intervene.

Finally, after a tedious litany repeated over and over, counsel for the government objected that Coe was arguing with the witness and the court sustained the objection. Coe argued, ignoring the fact that the objection had been sustained and ignoring the warning the court had given her about continuing to argue her view on objections after the court ruled on them.[1]

There then began the most outlandish performance this court has ever seen in a courtroom by a person with a license to practice law. As the court was ruling, Coe, standing between the witness box and the jury box, began to prance and dance along the aisle, grimacing towards the jury and the spectators and gesturing with her arms and hands. The court called this to an immediate halt, thereby shortstopping the reaction from the sizable aggregation of spectators obviously friendly to Dowdy. The court concluded in citing Coe for contempt that this was the only way she could be brought under control and the trial could proceed without further serious interruption.

On the occasion of the second citation, a police officer was testifying about the circumstances of a prior arrest of Dowdy. Coe stated an untimely objection, stating facts that were not in the record. The court overruled the objection. Coe argued with the court's ruling, twice invoked the name of Jesus in arguing her position, in a

---

1. That warning had been given when, on September 24, 1990 in a conference in chambers, the court said to her, "Miss Coe, you are going to be fined $100.00 every single time you speak beyond my sustaining an objection."

state of near hysteria. The court restated its ruling, Coe persisted, the jury was dismissed and Coe was found in contempt and fined.

On October 17, 1990, Coe was cross-examining an FBI agent. The court admonished her that she had asked the same question four times and asked her not to do so again. Coe's response was, "If I have to be here all day and ask these questions I will." And later, to the court, "Don't be giving me this problem." After five argumentative responses to the court's ruling and admonitions, and out of the presence of the jury, Coe was summarily found to be in contempt and fined $100, the court observing, "Miss Coe, your conduct this morning was rude, insolent, discourteous and constituted direct disobedience of the orders of the court. I find you in contempt and fine you $100.00."

This court finds that the conduct of Coe on each of the three occasions described in this order constituted an obstruction of the administration of justice. The court finds further that Coe was repeatedly guilty of insolent tactics, was out of control in her conduct on each of the three occasions and she thereby caused the court to be confronted with "situations envisioned by Rule 42(a) where instant action is necessary to protect the judicial institution itself." *Harris v. United States*, 382 U.S. 162, 167, 86 S.Ct. 352, 356, 15 L.Ed.2d 240 (1965). The use of the Rule 42(a) procedure here was necessary, to use the words of Chief Justice Taft, to fill "the need for immediate penal vindication of the dignity of the court." *Cooke v. United States*, 267 U.S. 517, 534, 45 S.Ct. 390, 394, 69 L.Ed. 767 (1925).

Addressing itself to the question of the appropriateness of punishing contumaciousness, the Court of Appeals for the Seventh Circuit said in *United States v. Seale*, 461 F.2d 345, 362 (1972):

> The reason that the rulings of a trial judge, no matter how sincerely felt to be or in fact indefensible, cannot excuse contumacious protestation is that "[i]t is essential to the proper administration of criminal justice that dignity, order and

decorum be the hallmarks of all court proceedings in our country." *Illinois v. Allen, supra,* 397 U.S. [337] at 343, 90 S.Ct. [1057] at 1061 [25 L.Ed.2d 353 (1970)]. Preservation of the liberties of citizens, when on trial for crimes charged against them, demands order in the courtroom. Absent such order, no trial can be fair.

The court in *Seale* later spells out the four elements necessary to support a statutory contempt citation: misbehavior, obstruction of the administration of justice, conduct in the court's presence and intent to obstruct. *Id.* at 366–67. All of these elements are clearly present here. *See also In Re Dellinger*, 461 F.2d 389, 399 (7th Cir.1972).

On the occasions at issue, the court found it necessary to act instantly to preserve order in the courtroom for the conduct of business. On each of the three occasions in question, Coe elicited the desired reaction from the spectators in the courtroom. The court knew that it had to act quickly and decisively in order to be able to proceed with this long, multi-defendant trial without a serious disturbance from the spectators.

This court is aware that to justify a summary contempt order under Rule 42(a) there must be conduct which actually obstructs the court in the performance of its judicial duties. There was such conduct by Coe during this trial many times more than the mere three contempt findings. The summary orders were deemed necessary by the court to remove an obstruction, prevent further disturbance in the gallery, and move forward in the trial.

In view of the foregoing, it is

ORDERED that Carol Coe is found to have been in contempt of this court on September 28, 1990, on October 10, 1990 and October 17, 1990. It is further

ORDERED that Carol Coe be fined $100 for each such contempt and that total judgment in the amount of $300 be entered in favor of the United States and against her. And it is further

ORDERED that the Clerk of Court shall neither receive nor file any pleadings from Carol Coe in any matter in which she is undertaking to represent a client until the aforesaid $300 fine, plus interest from this date at the lawful rate, is paid.