**UNITED STATES of America, Appellee,**

v.

**Gilbert DOWDY, Defendant,**

**Carol Coe, Appellant.**

**No. 91–2183.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 7, 1992.

Decided March 27, 1992.

Rehearing Denied May 1, 1992.

Carol Coe, pro se.

Linda L. Parker, Asst. U.S. Atty., Kansas City, Mo., argued, for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BEAM, Circuit Judge.

WOLLMAN, Circuit Judge.

Carol Coe appeals from the district court's order holding her in contempt of court pursuant to Fed.R.Crim.P. 42(a). We affirm.

## I.

Carol Coe represented one of four defendants who were tried together on various criminal charges. Coe's conduct early in the proceedings prompted the trial judge to warn Coe, during a conference in the judge's chambers, that the court would hold her in contempt and fine her one hundred dollars each time she disobeyed an order of the court. Coe was specifically warned against continuing to argue with the court after being ordered to be quiet. Thereafter, on three occasions during the course of the trial, the court held Coe in contempt.[1]

The first incident occurred on the nineteenth day of trial, four days after the court's initial warning. Coe was cross-examining a prosecution witness when the court warned Coe against commenting on the evidence and making other "unnecessary remark[s]." Appellant's App. at 24. The court cautioned Coe that "we are just about to get to the area you and I have talked about." Coe replied, "You want to fine me a hundred dollars." *Id.* Shortly thereafter the following exchange occurred:

[Ms. Coe]: Why don't you take a look at [the money order] and see what it says. What does it say? ...

[Witness]: Where is the date?

[Ms. Coe]: You bought them. You should be able to figure that out.

[Prosecuting Attorney]: Your honor, I object to Miss Coe's arguing with the witness.

[Ms. Coe]: I did not argue. I did not argue.

The Court: Miss Coe, you don't recognize what is argument and what isn't, obviously. That was an argument you made to the witness. And it is unnecessary and the objection is sustained....

Appellant's App. at 26–27.

While the court was announcing this ruling, "Coe ... began to prance and dance [between the witness box and the jury box], grimacing towards the jury and the spectators and gesturing with her arms and hands." Order of Contempt, 764 F.Supp. 576, 578 (W.D.Mo. May 13, 1991). The court immediately halted the proceedings and, outside the presence of the jury, held Coe in contempt of court and fined her one hundred dollars.

The second incident arose on the twenty-fifth day of trial, when Coe objected to an

---

1. The court found Coe in contempt on a fourth occasion and ordered her taken into the custody of the U.S. Marshal. After Coe conveyed her apologies to the court she was released and the contempt order vacated. This fourth incident was not included in the court's order of contempt and has no part in this appeal.

answer given by a witness. The court overruled the objection, but Coe continued to argue. The court reiterated that the objection had been overruled and instructed Coe to be quiet and sit down. Coe responded:

Ms. Coe: Can you in the name of Jesus be fair[?]

The Court: You, lady, are getting a lot more fairness than you are entitled to in this courtroom.

Ms. Coe: That's fine. I wish Jesus would touch you so you would stop being so bias [sic] every time I get up. It's a problem we can't go into this. When she asked him you let him answer. When I get up there I can't. And I am sick of it—I am sick of it.

The Court: Are you quite through?

Ms. Coe: Yes, I am through.

The Court: The objection is overruled. Go ahead, Miss Parker [prosecuting attorney]. We will deal with that during the break, Miss Coe.

Ms. Coe: You do whatever you want to do. I am tired of you being unfair. When I ask about this incident I can't go into it.

The Court: I am going to have you removed from the courtroom if you don't be quiet.

Ms. Coe: You can do whatever you want. You are the judge. You are in charge. But I am sick and tired of you not letting these people testify directly....

The Court: We are in recess and get her out of here.

Appellant's App. at 29–30. After the jury left the courtroom, the court held Coe in contempt because of her remarks and her refusal to obey the court's orders. It fined Coe an additional hundred dollars.

On the thirtieth day of trial, the third incident occurred. Coe was cross-examining another prosecution witness. The court noted that Coe had asked the same question several times and instructed her to proceed to her next question. Coe replied:

Ms. Coe: If I have to ask something 500 times I am entitled to. Your job is to rule on it.

The Court: You are not entitled and my ruling on objections to questions that are repetitious is consistently going to be sustaining the objections from here on.

Ms. Coe: That's fine. You just sustained this one. If I ask them 500 times, you sustain them 500 times.

The Court: That will do you a lot of good.

Ms. Coe: I am not on trial; my client is. It doesn't do my [sic] any good to be subject to this insult every day.

The Court: The insult hasn't even started yet today, Miss Coe. We will deal with that when the jury is gone.

Ms. Coe: Fine. Whatever.

Appellant's App. at 32.

Immediately thereafter, and outside the presence of the jury, the court found Coe in contempt and fined her one hundred dollars. The court based its ruling on the fact that Coe's conduct "was rude, insolent, discourteous and [in] direct disobedience of the order of the court." *Id.*

After the court delivered its sentence upon those defendants who had been convicted, the court entered a written order of contempt against Coe. The order certified that her conduct occurred in the presence of the court, that the court saw and heard it, and that in each instance an immediate response was required to preserve order in the courtroom. *See* Fed.R.Crim.P. 42(a). The order also noted that on each of the three occasions it had found Coe in contempt and had fined her one hundred dollars.

Coe appeals, arguing that the district court abused its discretion when it found her in contempt on each occasion and that she did not receive due process.

## II.

A district court has the power to punish by fine or imprisonment, at its discretion, "such contempt of its authority ... as [m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1).

A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed

in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

Fed.R.Crim.P. 42(a).

■ A summary order of contempt should only issue "where instant action is necessary to protect the judicial institution itself." *Harris v. United States*, 382 U.S. 162, 166–67, 86 S.Ct. 352, 355, 15 L.Ed.2d 240 (1965). It is appropriate where the misbehavior occurs in the presence of the trial judge and is known to him personally, and where immediate corrective action is necessary to restore the authority and dignity of the court. *Schleper v. Ford Motor Co., Auto. Div.*, 585 F.2d 1367 (8th Cir. 1978). We review a summary order of contempt for abuse of discretion. *See United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975).

### III.

Coe argues that the district court abused its discretion on each occasion it held her in contempt. Coe first argues that immediate action was not necessary to restore the authority and dignity of the court. Coe maintains that in each instance she acted zealously, not contemptuously, because her actions were necessary to explicate her position and to preserve a record for appellate review.

■ While zealous advocacy is essential to the conscientious, vigorous representation of a client's interests, the direct order of the trial judge "fixes the limit of proper advocacy; the vigor permissible in representing a client's interests has never included the flouting of a judge's ruling." *Pennsylvania v. Local Union 542, Int'l Union of Operating Engrs.*, 552 F.2d 498, 506 (3d Cir.), *cert. denied*, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977). Coe was held in contempt on the first occasion when she danced, pranced, grimaced and gestured before the jury while the court announced its ruling. However broadly one may view the limits of tolerable courtroom behavior, such conduct falls beyond the pale of zealous advocacy.

■ Coe's second contempt citation occurred when she ignored the court's order to be still and accused the court of bias. The third citation followed Coe's refusal to proceed to her next question and her attack on the court's management of the proceedings. Once a judge has ruled, the recourse of a zealous advocate lies in challenging the legality of that ruling on appeal, not in denigrating the wisdom and fairness of the court. *See Maness v. Meyers*, 419 U.S. 449, 459, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975) (once the court has ruled, counsel must abide by the ruling, comply with the court's order and not engage the court in extended discussion); *Sacher v. United States*, 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952) (counsel has right to preserve point for appeal, but no right to resist an adverse ruling or insult the judge); *Local Union 542*, 552 F.2d at 506–08 (creating and protecting trial record does not excuse defiance of court's explicit orders).

■ Coe next asserts that the district court abused its discretion because her actions were not wilfully defiant. Coe maintains that there was never a clear and definite order prohibiting the particular actions she took. This argument mischaracterizes the events at trial. Four days before Coe's first contempt citation the court warned her that she would be held in contempt each time she disobeyed an order of the court. Specifically, the court warned her against persisting to argue with the court after it had ruled. This qualifies as a clear order. As to Coe's dancing, grimacing and gesturing while the court announced a ruling, we are at a loss to understand how any attorney could not know that such conduct would be considered contumacious. *See Local Union 542*, 552 F.2d at 510 (act is wilful if person knows or should reasonably be aware that conduct is wrongful); *cf. Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970) ("It is essential to the proper administration of justice that dignity, order and decorum be the hallmarks of all court proceedings...."). Since the rules were clear, the district court could properly infer that Coe wilfully violated them. That Coe's conduct was cited on three separate occasions over a substantial period of time also supports the inference that she acted wilfully.

■ Finally, Coe asserts that her actions never threatened the orderly administration of justice. We do not agree. Coe disrupted the proceedings on three different occasions. Each time, the court found it necessary to halt the trial in order to address Coe's conduct. Coe flouted direct orders of the court, in defiance of its authority, and vividly displayed her disdain for the court and its rulings. Finally, her actions threatened to shift the focus of the trial away from the witnesses and the facts and onto herself and her relationship with the trial judge. Such distractions hamper the administration of justice by diverting a jury's attention from the real issues before it. Accordingly, the district court did not abuse its discretion in addressing these and other threats by summarily holding Coe in contempt and imposing fines.

### IV.

■ Coe also argues that the district court denied her due process. Coe first contends that she was entitled to notice and a hearing because the district court did not issue its written certification of the contempt order until after the jury had returned its verdict and the defendants had been sentenced.

Coe relies on *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974) and *United States v. Lumumba*, 741 F.2d 12 (2d Cir.1984) (opinion following remand, 794 F.2d 806 (2d Cir.), *cert. denied*, 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986)). In *Taylor*, the trial court orally informed an attorney nine times during the course of a trial that he was in contempt. After the completion of the trial, the trial court summarily held the attorney in contempt and imposed sentence. The Supreme Court reasoned that, where immediate action is required to preserve order in the court, a trial judge may punish, without notice and a hearing, contemptuous conduct committed in his presence. The trial court's delay in sentencing the attorney, however, indicated that immediate action had not in fact been required. The normal requirements of due process, therefore, should have been fulfilled, and thus the attorney should have received notice and a hearing. Likewise, in *Lumumba* an attorney was cited for contempt on two occasions, but adjudication and sentencing were deferred. The court held that the contemnor was entitled to a meaningful opportunity to address the charges against him.

The holdings of *Taylor* and *Lumumba*, however, are not applicable to the facts at issue here. On each occasion in the instant case, the district court immediately found Coe in contempt and simultaneously sentenced her to pay a fine of one hundred dollars. Thus we cannot infer, as the *Taylor* court did, that summary procedure was unnecessary to preserve order in the court. That the punishment was not executed until after trial does not alter our conclusion. As the Court noted, "[i]n proper circumstances, particularly where the offender is a lawyer representing a client on trial, [summary punishment] may be postponed until the conclusion of the proceedings." *Taylor*, 418 U.S. at 498, 94 S.Ct. at 2703.

[8] Finally, Coe argues that due process requires that she be sentenced by a different judge. *See Taylor*, 418 U.S. at 501–03, 94 S.Ct. at 2704–05 (judge embroiled in controversy with contemnor should not pass sentence); *Mayberry v. Pennsylvania*, 400 U.S. 455, 463–66, 91 S.Ct. 499, 504–05, 27 L.Ed.2d 532 (1971) (where contemptuous action is personal vilification of judge, and where contempt proceeding not summary, different judge should pass sentence).

Both *Taylor* and *Mayberry* address the disposition of non-summary contempt orders, i.e., where notice and a hearing are required. Neither case addresses the situation where, as here, a trial judge summarily holds someone in contempt and immediately passes sentence under Fed.R.Crim.P. 42(a). Indeed, a comparison of Rules 42(a) and 42(b) indicates that a different judge may be required only where notice and a hearing are required. Rule 42(a) provides for summary punishment of criminal contempt which the court saw or heard and which was committed in the presence of the court. Rule 42(b) provides that criminal contempt "except as provided in [42(a)] shall be prosecuted on notice.... If the contempt charged involves disrespect to or criticism of a judge, that judge is disqual-

ified from presiding at the trial or hearing...." *See Sacher,* 343 U.S. at 11–12, 72 S.Ct. at 456 (inference "almost inescapable" that Rule 42(a) permits a trial court summarily to punish even a personal affront). *But see Local Union 542,* 552 F.2d at 514 (judge could adjudicate summary contempt where not personally embroiled). We have already concluded that the district court did not abuse its discretion in summarily holding Coe in contempt. Coe's argument therefore fails.

The order of contempt is affirmed.